OPINION
{¶ 1} Dayton Power Light Company ("DPL") appeals from judgments of the Montgomery County Court of Common Pleas, overruling DPL's motion for partial summary judgment and sustaining motions for summary judgment filed by defendants Enerfab, Inc. and Continental Casualty Company ("Continental"). DPL argues that it should have been covered under Enerfab's liability insurance contract.[1] Because DPL did not actively participate in Enerfab's work, because the jury in the underlying case found DPL solely negligent, and because R.C. 2305.31
prohibits indemnity agreements in construction related contracts, we affirm the trial court's judgment.
 {¶ 2} The facts giving rise to the dispute among the parties are as follows.
 {¶ 3} In 1995, Alan Evans worked as a pipefitter for Enerfab, which had been hired by DPL to perform maintenance work at a DPL plant as an independent contractor. The job entailed working with a crew of pipefitters to replace twenty air preheater coils, each of which weighed about 3,200 pounds. The coils were long and narrow, and they were inserted into the building at an angle. Once the coils were inserted, the pipefitters fastened them in a temporary fashion because the gaskets that were required for permanent attachment of the coils had not yet been provided by DPL, as required by its contract with Enerfab. Evans suffered serious injuries when one of the coils slid out of position and knocked him off of a catwalk. Evans v. Dayton Power and Light Co., Adams App. No. 03CA763, 2004-Ohio-2183.
 {¶ 4} Evans sued DPL in the Adams County Court of Common Pleas, alleging that it was negligent in failing to supply the gaskets in a timely fashion, which would have permitted permanent attachment of the coils when they were installed. As a general rule, an owner of premises has no legal duty, and therefore cannot be liable in negligence, to the employees of an independent contractor working on the premises.Pusey v. Bater, 94 Ohio St.3d 275, 279, 2002-Ohio-795, 762 N.E.2d 968;Clark v. Southview Hosp. Family Health Ctr. (1994), 68 Ohio St.3d 435,438, 628 N.E.2d 46; Wellman v. East Ohio Gas Co. (1953), 160 Ohio St.103, 113 N.E.2d 629. Exceptions to this rule exist, however, where the owner actively participates in the project or controls a critical variable in the work environment. Sopkovich v. Ohio Edison Co.,81 Ohio St.3d 628, 642-643, 1998-Ohio-341, 693 N.E.2d 233; Michaels v. FordMotor Co., 72 Ohio St.3d 475, 1995-Ohio-142, 650 N.E.2d 1352;Hirschback v. Cincinnati Gas Elec. Co. (1983), 6 Ohio St.3d 206,452 N.E.2d 326, syllabus. Thus, the key issue in Evans was whether DPL had been negligent in actively participating or controlling a critical variable in the coil installation project. In rendering its verdict, the jury concluded that DPL had owed a duty to Evans, even though he was the employee of an independent contractor, because DPL had controlled a critical variable in the work environment, the availability of the gaskets. Evans obtained a judgment against DPL in the amount of $806,077.27. This judgment was affirmed, in pertinent part, on appeal.Evans, 2004-Ohio-2183, ¶ 42, 52.
 {¶ 5} DPL subsequently filed this suit against Enerfab in the Montgomery County Court of Common Pleas for breach of contract and indemnification. It also sought a declaratory judgment on the issue of insurance coverage against Continental, Enerfab's insurer, as DPL was contractually required to have been added as an "additional insured" on Enerfab's liability policies. The trial court granted summary judgment in favor of Enerfab and Continental and denied DPL's motion for partial summary judgment.
 {¶ 6} DPL filed the instant appeal, setting forth one assignment of error for our review: "The trial court erred in denying DPL's summary judgment motion against Continental and granting Continental's cross-motion."
 {¶ 7} Enerfab was insured by Continental. DPL's contract with Enerfab required Enerfab to maintain comprehensive general liability insurance coverage with a minimum limit of $1 million and to name DPL as an additional insured on the policy. In keeping with this contract, Enerfab's contract with Continental included a "Blanket Additional Insured Endorsement," which provided:
 {¶ 8} "WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (called additional insured) whom you are required to add as an additional insured on this policy under:
 {¶ 9} "1. A written contract or agreement[.]"
 {¶ 10} * * *
 {¶ 11} "The insurance provided to the additional insured is limited as follows:
 {¶ 12} "1. That person or organization is only an additional insured with respect to liability arising out of:
 {¶ 13} "a. Premises you own, rent, lease, or occupy; or
 {¶ 14} "b. `Your work' for that additional insured by or for you."
 {¶ 15} "Your work" is not defined in the policy.
 {¶ 16} DPL asserts that the trial court erred in denying its motion for summary judgment against Continental and in granting Continental's motion for summary judgment on the issue of insurance coverage for Evans' injuries. DPL claims that it was covered because DPL's liability grew out of Enerfab's operations. Continental responds that the trial court properly denied coverage because the contract did not cover DPL's own negligence, only DPL's liability for Enerfab's negligence. Thus, we turn to whether Enerfab's policy covered DPL under the circumstances presented.
 {¶ 17} DPL contends that our 2002 holding Danis Bldg. Constr. Co. v.Employers Fire Ins. Co., Montgomery App. No. 19264, 2002-Ohio-6374 supports its conclusion that it was covered by Enerfab's insurance contract. We disagree.
 {¶ 18} In Danis, Danis was the general contractor on a project, and it subcontracted with Mitre Masonry for masonry work. Mitre's contract with Danis required Mitre to name Danis as an additional insured on its comprehensive business and umbrella insurance policies. The primary policy limited Danis's coverage to liability arising out of work performed for Danis by Mitre. Id. at ¶ 8, 26. DPL concedes that the additional insured endorsements here and in Danis are essentially identical.
 {¶ 19} The masonry work that Mitre was hired to perform required the use of a crane to lift mortar pans to the height of Mitre's scaffolding, but Mitre did not have a crane or a crane operator at the site. Danis did have a crane and a crane operator, Dave King. Thus, Mitre used King and Danis's crane to lift mortar pans at the direction of Mitre's employees. King was still employed by Danis. In the course of King's work for Mitre, a Mitre employee suffered serious injuries when he was knocked from the scaffolding by a mortar pan that was being hoisted by the crane. The injured employee sued Danis and King, but not Mitre. Danis impleaded Mitre on an intentional workplace tort theory. Id. at ¶ 24-25.
 {¶ 20} In Danis, we discussed the difference between an indemnity clause and an additional insured clause. "A distinction must be drawn between contractual provisions which seek to exempt a party from liability to persons who have been injured or whose property has been damaged (i.e., an indemnity clause) and contractual provisions * * * which in effect simply require one of the parties to the contract to provide insurance for all the parties (i.e., an additional insured clause)." Id. at ¶ 32 (citations omitted). See, also, Buckeye Union Ins. Co. v.Zavarella Bros. Constr. Co. (1997), 121 Ohio App.3d 147, 151,699 N.E.2d 127. We observed that, under an additional insured clause, "coverage would be available only with respect to liability arising out of the subcontractor's work." In adopting this reasoning, we implicitly found that additional insured provisions in a contract do not violate R.C.2305.31, which prohibits indemnity agreements on public policy grounds.Danis, supra at 32. Turning to the circumstances then before us, we held that Danis and King were entitled to coverage under the additional insured provision in Mitre's insurance contract, because Danis assisted Mitre in performing Mitre's subcontract, at Mitre's request. Id. at ¶ 31.
 {¶ 21} Comparing the facts in Danis to those in the case before us, we note that the work performed by Danis and Mitre was inextricably intertwined. It appears that Mitre did not have the means to complete its portion of the project without the assistance of Danis's crane operator and the use of its crane. Importantly, however, the crane was operated at the direction of Mitre's employees. This level of involvement differs significantly from DPL's involvement with Enerfab's work, which was limited to the provision of parts. Under the terms of the contract between Enerfab and DPL, "DPL was to supply all the materials for the coil replacement project and Enerfab was to provide the necessary tools and manpower." Evans, supra at ¶ 81. Indeed,Evans expressly held that DPL's general supervisory role, that of ensuring workplace safety and compliance with the job specifications, was insufficient to establish "active participation" in Enerfab's work. Id. at ¶ 38. In other words, neither Evans nor DPL established that DPL had actively participated in Enerfab's work. Instead, Evans prevailed in his action against DPL on the theory that DPL's failure to provide the gaskets, and thus its control over a critical variable in the job, caused his injuries. Therefore, Danis is distinguishable on its facts.
 {¶ 22} DPL further contends that the insurance contract provision that provided coverage to an additional insured for liability "arising out of" Enerfab's work affords broad coverage. DPL asserts that it should be covered by the policy because DPL's liability "was causally related to Enerfab's failure to secure the coil," and an expansive reading of the contract language "requires a causal relationship, but not one of proximate cause." The problem with DPL's argument is that Enerfab has never been found to have been negligent. Evans did not even allege that Enerfab had been negligent. Rather, Evans' case focused on whether DPL had retained control over a critical element of the work process, i.e., the provision of the gaskets required to permanently attach the coils, such that DPL was liable for the injury. In other words, Evans' theory of the case was that DPL had incurred a duty of care to the employees of the independent contractor by retaining control over a critical variable in the work environment. SeeSopkovich, 81 Ohio St.3d 628; Michaels, 72 Ohio St.3d 475;Hirschback, 6 Ohio St.3d 206. DPL did not file a third-party action against Enerfab. The jury found in favor of Evans, concluding that DPL had controlled a critical variable in the workplace that caused the injury. Although DPL still disputes this finding, it is settled for purposes of determining insurance coverage. Because the jury concluded that DPL was negligent for its own actions, DPL's liability did not fall within the additional insured provision of Enerfab's policy. Coverage was properly denied.
 {¶ 23} Moreover, in light of the jury's finding that DPL was negligent, the interpretation of the insurance contract proposed by DPL would violate R.C. 2305.31. R.C. 2305.31 "prohibits indemnity agreements, in the construction-related contracts described therein, whereby the promisor agrees to indemnify the promisee for damages caused by or resulting from the negligence of the promisee." Kendall v. U.S.Dismantling Co. (1985), 20 Ohio St.3d 61, 485 N.E.2d 1047, paragraph one of the syllabus. As discussed above and in Danis, an additional insured provision can provide coverage "only with respect to liability arising out of the subcontractor's work." DPL was found liable, but the subcontractor, Enerfab, was not. To find coverage in such a situation would go beyond the scope of an additional insured provision and approve an indemnity provision. Such an interpretation is prohibited by R.C.2305.31.
 {¶ 24} The assignment of error is overruled.
 {¶ 25} The judgment of the trial court is hereby affirmed.
[1] In its brief, DPL also argues, in a second assignment of error, that Enerfab breached its contract by failing to include DPL on the insurance policy. At oral argument, the parties indicated that a settlement had been reached between Enerfab and DPL, and that the second assignment of error was withdrawn.
BROGAN, J. and FAIN, J., concur.
(Hon. Sumner E. Walters, retired from the Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)